Commonwealth of the
Northern Mariana Islands
**Board of Elections**, Petitioner,
v.
**Superior Court**, Respondent,
and Lucas L. Mendiola, Vicente
Manglona, Vicente M. Atalig,
Frances M. Sablan, Efrain M.
Atalig, Jovita Taimanao, Abraham R.
Taimanao, and Joseph Inos,
Real Parties In Interest.
Original Action No. 94-002
Order
March 18, 1994
Amended April 6, 1994

---

67 TTC § 115.

this time to prohibit the court from considering, under 1 CMC § 6421(d) of the Northern Mariana Islands Election Act ("Election Act"),[1] the Board of Election's ("BOE" or "petitioner") "post-election activity, except for the arithmetical tabulation of votes."[2] For the reasons discussed below, we deny the petition.

## JURISDICTION & STANDARD FOR ISSUANCE OF A WRIT

■ Our extraordinary writ jurisdiction over the Superior Court stems from our general supervisory powers.[3]

■ A writ of prohibition is a drastic remedy that will not be granted except to confine an inferior court to the exercise of its prescribed jurisdiction.[4] In determining whether to issue a writ, we are guided by the five factors set out in *Tenorio v. Superior Ct.*, 1 N.M.I. 1, 9-10 (1989).[5]

---

[1] 1 CMC § 6001 et seq.

[2] Petition for Writ of Prohibition at 15.

[3] *See* 1 CMC § 3102(b); *Taimanao v. Superior Ct.*, 4 N.M.I. 94, 96 (1994) (citing *Tenorio v. Superior Ct.*, 1 N.M.I. 1, 7 (1989)).

[4] *See Taimanao*, 4 N.M.I. at 97.

[5] *Id.* (citing *Commonwealth v. Superior Ct.*, 1 N.M.I. 287, 294-95 (1990)). These factors are:

1. The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief desired;
2. The petitioner will be damaged or prejudiced in a way not correctable on appeal;
3. The lower court's order is clearly erroneous as a matter of law;
4. The lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules; and
5. The lower court's order raises new and important problems, or issues of law of first impression.

*Commonwealth v. Superior Ct.*, 1 N.M.I. at 294-95 (citing *Tenorio*, 1 N.M.I. at 6-7).

Counsel for petitioner: James S. Sirok, Saipan.

Counsel for real parties in interest Lucas L. Mendiola, Vicente Manglona, Vicente M. Atalig, Frances M. Sablan and Efrain M. Atalig: Daniel R. Del Priore, Saipan (Atalig, Del Priore & Gumataotao).

Counsel for real parties in interest Jovita Taimanao, Abraham R. Taimano and Joseph Inos: David A. Wiseman, Saipan.

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ, Justice, and MACK, Special Judge.

PER CURIAM:

For the second time in this case, we are asked to issue a writ of prohibition against the Superior Court,

## FACTS AND
## PROCEDURAL BACKGROUND

Briefly, this election contest began on January 13, 1994, when the real parties in interest/contestants[6] ("contestants") filed three separate complaints, which the Superior Court later consolidated.

The contestants filed amended complaints that were stricken as defective by the Superior Court in a decision and order filed February 9, 1994 ("February 9 decision").[7] In the same decision, the court denied a motion to dismiss for lack of jurisdiction made by the real parties in interest/defendants ("defendants").[8] The defendants then petitioned this Court for a writ of prohibition, which we denied.[9]

The Superior Court subsequently bifurcated the claims in the election contest proceedings. First, from March 7, 1994, to March 11, 1994, the court heard the contestants' evidence on the claims that (1) BOE received bribes, and (2) BOE was biased against the Republican candidates. On motions of the defendants and the petitioner, the court dismissed these two claims on March 10, 1994, for failure to establish a prima facie case.[10] On March 16, 1994, the court filed a memorandum decision and order ("March 16 decision") discussing these dismissals.[11]

The second phase of the bifurcated proceeding (yet to take place) relates to the contestants' remaining claim, that BOE committed errors in adjudicating challenges to the qualifications of certain individual voters on Rota.[12] Of approximately 167 voter challenges, BOE denied

some of the challenges and sustained the rest. BOE did count all unsuccessfully challenged votes in the final tally. BOE did *not* count any of the successfully challenged votes in the final tally.[13]

When members of BOE were subpoenaed on March 7, 1994, to testify at the election contest hearing, BOE moved to quash the subpoenas. The motion is still pending before the trial court.

On March 8, 1994, BOE was granted permission to intervene. On March 10, 1994, the petitioner filed this application for a writ to prohibit the Superior Court "from continuing to conduct any further proceedings in these matters under the broad standard and definition it gave to the term 'conduct of election,' as it is set forth in 1 CMC [§] 6421(d), under [sic] its [February 9 decision]."[14]

## ISSUE

The issue we address is whether the Superior Court has jurisdiction under 1 CMC § 6421 of the Election Act to review the challenged votes determined to be illegal by BOE, but which contestants assert are legal and should be counted.

## DISCUSSION

■ The legislature has "conferred jurisdiction on our Superior Court to entertain election contests to ensure fairness in the 'conduct of elections.'"[15] There is no question that 1 CMC § 6421(c)[16] of the Election Act, by its plain language, provides for judicial review of votes alleged by contestants to be illegal, but adjudged legal by BOE. The question before us is whether the converse is true, i.e., whether 1 CMC § 6421 provides for judicial

---

[6] The contestants who remain parties to this action are Lucas Mendiola, Vicente Atalig, Vicente A. Manglona, Frances Sablan, and Efrain Atalig.

[7] *See Mendiola v. Taimanao*, Civ. Nos. 94-0024, 94-0025 & 94-0026 (consol.) (N.M.I. Super. Ct. Feb. 9, 1994) (Decision and Order on Motion to Reject Pleadings and Motion to Dismiss) ("February 9 decision").

[8] These individuals are Jovita Taimanao, Abraham Taimanao and Jose Inos.

[9] *See Taimanao*, 4 N.M.I. at 96.

[10] *See Mendiola v. Taimanao*, Civ. Nos. 94-0024, 94-0025, 94-0026 (consol.) (N.M.I. Super. Ct. Mar. 16, 1994) (Memorandum Decision on Motions to Dismiss; Order for Stay) ("March 16 decision").

[11] *Id.* at 1-20.

[12] *Id.* at 3-4.

---

[13] *Id.* at 3 (citing *Sablan v. Board of Elections*, Civ. No. 93-1274 (N.M.I. Super. Ct. Jan. 3, 1994) (Decision and Order on Plaintiff's Motion for Preliminary Injunction at 2).

[14] Petition for Writ of Prohibition at 3. The trial court stayed the proceedings below pending the outcome of this petition.

[15] *Taimanao*, 4 N.M.I. at 97.

[16] This provision provides: "Illegal votes were cast. "Illegal votes" means any vote cast by a person who is not qualified to vote because of failure to meet age or residency requirements or has cast more than one ballot in the same election . . . ." 1 CMC § 6421(c).

**113**

review of votes alleged by contestants to be legal, but adjudged illegal, and not tallied, by BOE.

■ We hold that the Superior Court has jurisdiction to review election contests based on claims that legal votes were not counted. This jurisdiction emanates from 1 CMC § 6421(d), which allows election contests arising from BOE's actions "in the conduct of election[s]."[17] Any reading to the contrary would "not serve the public policy of providing a means for defeated candidates and other voters to contest the outcome of an election when they have substantial grounds to believe that that outcome did not reflect [the] [sic] will of the majority of those legally voting."[18]

BOE asserts that 1 CMC § 6421(d) confers jurisdiction on the trial court to review BOE's post-election activities only with respect to arithmetical tabulations of votes. This reading of the statute would prevent the Superior Court from hearing election contests based on claims that legal votes were not counted. Such a result would clearly frustrate the purpose of the election contest statute. The petitioner has provided us with no authority in support of its interpretation of the statute.

A related concern expressed in BOE's petition is that the trial court, in the remaining course of the election contest hearing, will somehow delve "into the elements comprising [BOE's] decisions on[] each of the voter's qualifications to vote, on [BOE's] procedural rulings, and on [BOE's] ability to regulate the conduct of its member's [sic] through internal [BOE] rules."[19] We find the petitioner's fears groundless.

The harm that the petitioner asserts is speculative. The petitioner moved to quash the subpoenas served on it, but filed this petition before the Superior Court ruled on that motion. Whether the motion is granted is irrelevant, however, because BOE has failed to provide us with any concrete evidence that the trial court will permit BOE members to be interrogated about their mental processes as they existed during the administrative hearings. The Superior Court's decisions and orders to date indicate that the court is cognizant of protective measures such as the "deliberative process privilege."[20]

We deny the petition for writ of prohibition because BOE has not established cause for issuance of such a writ under any of the five factors specified in *Tenorio*.[21] The Superior Court has jurisdiction to review the legality of all of the approximately 167 challenged votes that were adjudicated by BOE in the 1993 Rota mayoral and municipal council elections, and that are disputed in this action.

It is hereby **ORDERED** that the petition for writ of prohibition is **DENIED**.

---

[17] This provision provides, in full: "The Board in the conduct of election or arithmetical tabulation of votes made errors sufficient to change the final result of the election as to any person who has been declared elected." 1 CMC § 6421(d).

[18] *See* February 9 decision, *supra* note 7, at 20.

[19] Petition for Writ of Prohibition at 13.

[20] *See, e.g.,* March 16 decision, *supra* note 10, at 14-16.

